# THE UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action, File Number:    04 -cv – 00396 LTB (KLM)

HOWARD MYERS individually and as father and next best friend of ETHAN MYERS and LUKAS MYERS, minors,

    Plaintiffs,

V.

MID-WEST NATIONAL LIFE INSURANCE COMPANY a/k/a or d/b/a or separately; MID-WEST NATIONAL LIFE INSURANCE COMPANY OF TENNESSEE,

    Defendants.

_____

## PLAINTIFF'S PROPOSED SECOND AMENDED COMPLAINT
_____

COMES NOW, the Plaintiffs, HOWARD MYERS, ETHAN MYERS, and LUKAS MYERS, by and through their counsel of record, McCormick & Murphy, P.C., and upon their best information and belief at this time for their Second Amended Complaint against the Defendants, state the following:

## GENERAL ALLEGATIONS

1.     That at all relevant times hereto, the ALLIANCE FOR AFFORDABLE SERVICES a/k/a or d/b/a or separately ALLIANCE FOR AFFORDABLE HEALTH CARE ASSOCIATION (hereinafter referred to as "ALLIANCE"), was a non-profit corporation organized and incorporated under the laws of the District of Columbia, and was also licensed to do business and doing business in the State of Colorado, and in particular El Paso and Teller

Counties, as an agent of health insurance, with actual and apparent authority, and an agent and broker of health insurance for Defendant MID-WEST NATIONAL LIFE INSURANCE COMPANY a/k/a or d/b/a or separately; MID-WEST NATIONAL LIFE INSURANCE COMPANY OF TENNESSEE, hereafter MID-WEST.

2. That at all relevant times hereto KENN KOCHAN a/k/a KENNETH KOCHAN (hereafter "KOCHAN"), was a resident of El Paso County Colorado, working within the course and scope of his employment as a licensed insurance agent with ALLIANCE, and working within the course and scope of his employment with and / or as and authorized agent of Defendant MID-WEST NATIONAL LIFE INSURANCE COMPANY a/k/a or d/b/a or separately MID-WEST NATIONAL LIFE INSURANCE COMPANY OF TENNESSEE (hereinafter "MID-WEST"), with actual and apparent authority.

3. That at all relevant times hereto Defendant MID-WEST was an insurance company organized and incorporated under the laws of Tennessee, and was also licensed to do business and doing business in the State of Colorado, and in particular in El Paso and Teller Counties as an insurance company.

4. That at all relevant times hereto the Plaintiffs were residents of Teller County, State of Colorado.

5. That the Court has accepted jurisdiction of this matter pursuant to the Defendants Removal of this action from State Court.

6. On or about January 15th 2002 Plaintiff Howard Myers filled out an application for health insurance with MID-WEST that was provided by KOCHAN and ALLIANCE.

7. KOCHAN and ALLIANCE advised Plaintiff to select MID-WEST, and Plaintiffs

had no experience in these matters and relied on KOCHAN AND ALLIANCES recommendations. The application included a request for coverage of all three of Howard Myers children, including Ethan and Lukas.

8. Plaintiff Howard Meyers is a painter, and has no experience in insurance matters, other than having had a full health insurance policy through his employer in Ohio. It was represented to him by KOCHAN and ALLIANCE that they were licensed and experienced in insurance matters, and that they could competently handle his application and procurement of health insurance.

9. Howard Myers relied on these representations.

10. That the Defendant had a duty to not misrepresent any material facts to Plaintiffs, to process Plaintiffs application quickly and promptly, and to issue the health insurance policy that they promised to issue.

11. Defendants KOCHAN and ALLIANCE provided Plaintiff Howard Myers with a verbal benefit summary for the health insurance he applied for, and accepted and cashed a check for that insurance in the amount of $376.11. Attached as **Exhibit "1"**.

12. Defendant, through KOCHAN and ALLIANCE represented that he was purchasing a full health insurance policy with $1,000,000.00 coverage and a $5,000.00 deductible.

13. Defendant through its agents KOCHAN and the ALLIANCE represented that he would receive the insurance policy, and that there was no need for him to look elsewhere for health insurance, which he would have done if it had not been for such representations.

14. KOCHAN and ALLIANCE submitted the Plaintiffs application for insurance to

MID-WEST, and MID-WEST accepted the application and the premium payment for the insurance as evidenced by their acceptance of the premium paid by Plaintiff Howard Myers.

15. Defendants KOCHAN and ALLIANCE promised Howard Meyers that his application would be accepted, and that he would be issued the full health insurance policy by MID-WEST. Plaintiff's relied on the acceptance of the payment by KOCHAN and ALLIANCE, as well as the representations of KOCHAN and ALLIANCE, set forth in more detail hereafter, that there application would be accepted, and that they would receive health insurance coverage.

16. After the initial meeting where Howard Meyer's was told that Plaintiff's application would be accepted, and that they would be issued a policy of insurance by MID-WEST, Howard Myers called Defendant's KOCHAN and ALLIANCE on several occasions to check on the status of his application and to see if any other information was needed. In these subsequent conversations, and throughout the time that Plaintiff Howard Myers dealt with MID-WEST's agents KOCHAN and ALLIANCE, they told, represented and assured him that everything was being handled in an expeditious fashion, that everything was in order, and that the policy would be issued.

17. Although Howard Myers sign an acknowledgement that acceptance of payment would not guarantee issuance of a policy, he was told by MID-WEST's agents KOCHAN and ALLIANCE that was a mere formality, and that the policy would be issued. These representations were material to Plaintiff's desire to obtain health insurance, and in particular to obtain health insurance immediately. Defendant's statements through its agents were made to Plaintiffs as statements of existing and material fact, and Plaintiff's were not in a position to judge them otherwise.

4

18. The Defendant through its agents KOCHAN and ALLIANCE promised and / or orally contracted with Plaintiff's to deliver a policy of insurance to Plaintiffs.

19. The statements made to Plaintiffs were false, and MID-West knew or should have known that the representations that were being made were false, and that the Plaintiffs would rely on such representations, since Plaintiffs were lay people, not familiar with matters of insurance.

20. Plaintiffs reasonably relied, to their detriment, on the representations and promises of the Defendant, and their reliance was justified, and they suffered damage as a result of such reliance. Defendant's promises and representations induced Plaintiffs to forbear from purchasing other insurance, plaintiffs reasonably relied on such promises and representations to their detriment, because they did not procure other insurance, and Defendants have refused to provide the promised insurance, and to not enforce Defendants promise would cause great injustice.

21. Defendant breached their duty to plaintiffs by negligently delaying and/or failing to process Plaintiff's application for health insurance and other information in a reasonably prompt fashion, which was a cause of Plaintiffs alleged damages. If they had acted promptly, Plaintiffs would have procured health insurance before the automobile accident in question. Further, Defendant MID-WEST breached its duty to Plaintiffs by negligently representing that they were acting promptly on their application and that the health insurance policy would be issued.

22. Defendant MID-WEST breached its duties to the Plaintiffs by failing to act promptly to process Plaintiff's application for insurance, and to communicate with Plaintiff's

concerning any problems with the application. If MID-WEST had acted promptly, Plaintiffs would have procured health insurance elsewhere before the automobile accident in question, and MID-WESTS negligence, breach of contract, breach of promise and fraudulent conduct is a cause of Plaintiffs damages.

23. Plaintiffs relied to their detriment on the representations and inactivity of MID-WEST, and if Defendant had not promised, contracted, represented and lead Plaintiffs to believe that an insurance policy would be issued; Plaintiffs would have immediately procured insurance elsewhere, and would have been insured at the time of the Plaintiff's automobile accident.

24. On January 22nd 2002 Plaintiff's Ethan and Lukas Myers were passengers in a vehicle driven by their sister, Bethany Myers, when a drunk driver struck their car head on. Ethan and Lukas suffered catastrophic and permanent injuries, including but not limited to, broken bones, coma, head injury, amputation, scarring, and internal injuries. Ethan and Lukas Myers were hospitalized for several months and have required extensive rehabilitation since the accident which is still ongoing. Ethan and Lukas have incurred medical and rehabilitation expenses in excess of $750,000.00 each.

25. On March 22, 2002, Defendant MID-WEST issued three checks to Plaintiff Howard Myers which were designated as "refund" checks. **Exhibit "2"**. These checks were issued after MID-WEST had already accepted the premiums paid by Plaintiffs, and after MID-WEST had learned that Plaintiffs Ethan and Lukas Myers had been in a serious accident and were incurring large medical expenses. MID-WEST has breached its promises, contract, and representations that they would issue a health insurance policy to the Plaintiffs.

26. In December 2002 numerous medical bills of Plaintiffs were sent to Defendant

MID-WEST, and no response was given to the request for payment of those bills.

27. MID-WEST has never issued a health insurance policy as it promised.

28. Although MID-WEST may have made requests for additional information, any requests for additional information by Defendants MID-WEST were after it had learned of the Plaintiffs accident, after it had accepted the premiums, and were unjustified, and merely a pretext for their bad faith refusal to insure the Plaintiffs.

28. Defendants MID-WEST vested Defendants KOCHAN and ALLIANCE with actual and apparent authority to act on there behalf, and KOCHAN and ALLIANCE at all relevant time acted with actual and apparent authority and are bound by all actions, promises and representations made by KOCHAN AND ALLIANCE.

29. In September of 2007, Mid-West Life Insurance Company revealed for the first time a new defense to the claims that the Plaintiffs had brought against it. The Defendant provided the Plaintiffs in its supplemental response to Plaintiffs' Second Request for Production of Documents (only after threats of filing a motion to compel) an exemplar of an insurance policy that it contends it *would have* issued to the Myers if, in fact, they had issued a health insurance policy pursuant to the application. This insurance policy, attached hereto as **Exhibit 3.**

30. This insurance policy, attached hereto as **Exhibit 4**, provides very little, or no, health insurance benefits. It has a list of medical services by category, such as intensive care, extended hospital stays, ambulance, etc., and then places limited dollar limitations on each category. This health insurance policy has come to be known as a "junk" health insurance policy because it doesn't provide any real benefits for the premiums that are being paid.

31. Mid-West Life sells these health insurance policies through the Alliance for

Affordable Health Services, and its sister company Mega Life Insurance Company sells the same "junk" policies through its sales agency, the National Association of the Self-Employed. Plaintiffs' investigation revealed that Mid-West Life and its sister company has been investigated and fined by several state insurance commissioners for its deceptive practices.

32. Upon information and belief, the sales agents of the Alliance for Affordable Health Services and the National Association of the Self-Employed are trained by the same entity, HealthMarkets Agency Marketing Group, an affiliated company of MID-WEST and that these agents are trained to sell health insurance policies as though they are full benefit health insurance policies.

33. Upon information and belief, the agents, such as KOCHAN, are trained to not show the prospective insured's, like the Plaintiff's, the written schedule of benefits, and to lead them to believe that they are purchasing a full benefit health insurance policy similar to what they would purchase from Blue Cross Blue Shield or other similar reputable health insurance companies. In fact, they are selling the "junk" insurance policies in a fraudulent and deceptive manner.

34. Defendant, through its agents KOCHAN and ALLIANCE, in conjunction with its affiliated and parent companies, HealthMarkets, Mega Life and health Insurance company, and UICI, and Cornerstone, developed and implemented a fraudulent scheme of selling "junk" insurance policies, by not showing the prospective insured's the limitation of benefits that it disclosed in September of 2007, and leading them to believe that they were purchasing full health insurance policies. These are the practices that were employed in the sale of the insurance policy to the Myers', and it was with the full knowledge of the Defendant.

## CAUSES OF ACTION AGAINST DEFENDANT MID-WEST

35	Plaintiffs incorporate and re-allege the allegations contained in paragraphs 1 through 34f this Complaint as if fully set forth herein.

36	At all times hereto, KOCHAN and ALLIANCE were agents of MID-WEST, at all times acting with actual and apparent authority, and MID-WEST is liable for all of the actions and breaches of KOCKAN and ALLIANCE.

37.	The actions of MID-West constitute breach of contract, and promissory estoppel. Such actions were a cause of Plaintiffs damages, and Plaintiffs have suffered damages.

38.	The acts and representations of MIDWEST constitute fraud and fraudulent misrepresentation. Such conduct was the cause of Plaintiffs damages, and Plaintiffs have incurred damage as a result of MIDWEST's fraudulent acts and representations.

39.	MID-WEST was negligent in the processing of Plaintiff's application, including but not limited to, their failure to promptly act promptly on the application and in the making of requests for further information, and failing to properly supervise their agents. Such negligence was a cause of Plaintiffs damages, and Plaintiffs have incurred damages as a result of such negligence. Further, the representations that Defendant's made to Plaintiff's were negligent, the Plaintiff's relied on such representations, the representations related to material facts and were stated as existing fact, such representations were the cause of Plaintiffs damages, and the Plaintiff's incurred damage as a result of the negligent misrepresentations of the Defendant's.

40.	MID-WEST was in a position of trust and were fiduciaries of Plaintiffs. MID-WEST breached its fiduciary duties to the Plaintiffs, and the Plaintiffs suffered damages as a result. The Plaintiffs relied on Defendants expertise in the insurance field, did not have any

9

expertise in insurance matter, and were entirely dependant on the Defendants to procure and issue health insurance to them.

41. Defendants MID-WEST accepted the premiums of Plaintiff's, and were the Plaintiffs insurance company.  Defendants MID-WEST acted in breach of their common law contractual duty to treat the Plaintiffs in good faith, and their actions amount to insurance bad faith.  The actions of Defendant's were unreasonable, and they knew such conduct was unreasonable or the Defendant's recklessly disregarded the fact their conduct was unreasonable.  Further, their actions violated the Colorado Unfair Claims Practices Act.  Such actions caused Plaintiffs damages, and the Plaintiff's incurred damage as a result of such bad faith.

42. Defendant MID-WEST was in a position of authority over Plaintiffs.  Defendant knew or should have known of the consequences of their misrepresentations and delay in processing Plaintiffs application for insurance, and in particular by their wrongful rejection of coverage after having accepted the Plaintiff's premiums and acknowledged coverage.  Defendants conduct was extreme and outrageous.

43. Defendant's conduct has been willful, wanton, and without out regard to the Plaintiffs rights and feelings, and with reckless disregard to the unreasonableness of their actions.

44. As a direct and proximate result of the bad faith of Defendants, the Plaintiffs have suffered and continue to suffer injuries and damages as alleged herein, including but not limited to, financial hardship, inability to properly care for their physical condition and obtain medical care, aggravation of their condition, unexpected hardships including standard of living adjustments, reasonable value of time related to this litigation, lost employment opportunities, emotional distress, injury to credit, exposure to billing by other insurance carriers, costs, interest,

and attorney's fees.

WHEREFORE, Plaintiffs requests the Court enter judgment in their favor and against Defendant and award them compensatory damages, punitive damages, all common law and statutory benefits including penalties, interest; attorneys fees, economic losses, pain and suffering and emotional distress, consequential damages, and for such other and further relief as the Court deems just and reasonable; including costs, expert witness fees, and other damages.

**PLAINTIFFS DEMAND A TRIAL TO A JURY ON ALL CLAIMS.**

RESPECTFULLY SUBMITTED this 10th day of March, 2008.

              **McCORMICK & MURPHY, P.C.**

        By: _____
           Kirk R. McCormick

<u>Plaintiffs address</u>:

345 Oxford Place
Florissant, CO  80816